# EXHIBIT B

Justin D. Heideman (USB #8897)
Norman W. Peat, Jr. (USB #17836)
**Heideman & Associates**
2696 North University Avenue, Suite 180
Provo, Utah 84604
Telephone: (801) 472-7742
Facsimile: (801) 374-1724
Email:      jheideman@heidlaw.com
      npeat@heidlaw.com
*Attorney for Plaintiff*

> **This Motion requires you to respond. Please see the Notice to Responding Party.**

## IN THE FOURTH JUDICIAL DISTRICT COURT
## IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| MOUTAIN RUN SOLUTIONS, LLC, a Utah Limited Liability Company,<br><br>    Plaintiff,<br><br>vs.<br><br>CAPITAL LINK MANAGEMENT, LLC, a Utah Foreign Limited Liability Company,<br><br>    Defendant. | **Amended Motion for Prejudgment Writ of Attachment, and Writ of Garnishment**<br><br>**(Request for Hearing)**<br><br>Case No.: 220401093<br>Judge: Hon. Sean Petersen |

COMES NOW, Plaintiff, MOUNTAIN RUN SOLUTIONS, LLC, ("Plaintiff," or "MRS") by and through undersigned counsel, and pursuant to Utah R. Civ. P. 7, 64A, 64C, and 64D, hereby submits to this Court Plaintiff's *Motion for Prejudgment Writ of Attachment, and Writ of Garnishment.*

### Relief Sought and Grounds Therefor

Plaintiff seeks a writ of attachment and writ of garnishment from this Court, and requests permission to take possession of property currently held by Defendant, CAPITAL RUN SOLUTIONS, LLC, (hereafter "Defendant," or "CRS"), for the purpose of securing Plaintiff's interest in monies and assets belonging to, and owed to Plaintiff as of June 30,

2022, for the abandonment of Defendant's contractual duties under the Parties' *Collection Agreement* (hereinafter the "Agreement"). Plaintiff additionally prays for the issuance of a prejudgment writ of garnishment.

The basis for this motion is outlined in Utah R. Civ. P. 64A, 64C, and 64D, the *Verified Complaint,* and *Affidavit of Brian Fuller* filed contemporaneously herewith.

## STATEMENT OF FACTS AS ALLEGED IN VERIFIED COMPLAINT

1. Plaintiff is a limited liability company located in Orem, Utah.

2. Plaintiff is a company that specializes in purchasing non-performing receivables[1] in all industries.[2]

3. Plaintiff started operations on or about May 2015, as Perfection Collection, LLC.[3]

4. In 2019, Plaintiff changed its name from Perfection Collection, LLC, to Mountain Run Solutions, LLC.[4]

5. Defendant is a third-party collection agency that specializes in, but not limited to, the collection of consumer, commercial, installment loan, and medical debt.[5]

6. On January 6, 2015, agents for Defendant, Jonathan Rinker ("Mr. Rinker"), and Samuel Piccione ("Mr. Piccione") entered in to, and signed, the *Agreement* on behalf of, and for Defendant, with Plaintiff in effort to recover non-performing receivables on behalf of Plaintiff.[6]

---

[1] A "non-performing Receivable means a Receivable (i.e., monies) that becomes 90 days past due." *See* https://www.lawinsider.com/dictionary/non-performing-receivable (last visited July 5, 2022).
[2] Affidavit of Brian Fuller, ¶ 4.
[3] *Id.* at 5.
[4] *Id.* at 6.
[5] Defendant's operated its third-party collection agency under the name of previous name of Commerce Recovery and Capital Management, LLC.
[6] *See* Collection Agreement attached hereto as Exhibit 1; *see also* Fuller Aff. at ¶ 7.

7.  Pursuant to the terms of the *Agreement*, Plaintiff agreed that it would assign delinquent accounts of Plaintiff it owned with Defendant for collect efforts.[7]

8.  Pursuant to the terms of the *Agreement*, Defendant agreed that it was to take "all reasonable steps to collect Accounts assigned to it (Defendant).[8]

9.  Defendant accepted a forty (40) percent commission "on any payments that debtors send directly to Client (Plaintiff) for assigned Account. . ."[9]

10. Pursuant to the terms of the *Agreement*, Defendant was required to, and agreed that "[a]ll funds collected on Accounts shall be paid monthly minus the Agency's (Defendant's) fee."[10]

11. Plaintiff started placing accounts with Defendant shortly after the Parties signed the *Agreement*.[11]

12. Plaintiff continued placing accounts with Defendant until December 2020.[12]

13. In June of 2021, Plaintiff became concerned with Defendant's ability to remit payments to Plaintiff from Defendant's successful collection efforts.[13]

14. In anticipation of the *Agreement* being repudiated by Defendant, Plaintiff requested adequate assurance of performance by Defendant.[14]

---

[7] *Id.* at ¶ 1; Fuller Aff. at ¶ 8.
[8] *Id.* at ¶ 2; Fuller Aff. at ¶ 9.
[9] *Id.* at ¶ 5; Fuller Aff. at ¶ 10.
[10] *Id.* at ¶ 7; Fuller Aff. at ¶ 11.
[11] Fuller Aff. at ¶ 12.
[12] *Id.* at ¶ 13.
[13] *Id.* at ¶ 14.
[14] *Id.* at ¶ 15.

15. On June 23, 2021, agent for Plaintiff, Chris Carter ("Mr. Carter") contacted Defendant to discern whether Defendant was going to remit amounts owed from the first half of May 2021.[15]

16. Specifically, Mr. Carter emailed Defendant requesting if Defendant is going to remit $48,482.96 that was due and owing.[16]

17. On June 29, 2021, after Defendant failed to remit the amount owed or even communicate with Plaintiff, Mr. Carter emailed Defendant again requesting whether the funds would be paid that day.[17]

18. Again, Defendant failed to remit any payments due and owing as required under the *Agreement*.[18]

19. On June 30, 2021, agent for Plaintiff, Brian Fuller ("Mr. Fuller") contacted agent for Defendant, Mr. Piccione, concerning the failure to remit payments pursuant to the Parties' *Agreement*.[19]

20. Mr. Piccione confirmed that Plaintiff would receive a payment the following day.[20]

21. Additionally, Mr. Piccione confirmed with Plaintiff that Defendant would cure all remaining outstanding amounts owed.[21]

22. On July 1, 2021, Defendant made a payment of $48,482.00 for the first half of the amount owed for May 2021.[22]

---

[15] *Id.* at ¶ 16; *see also Complaint Verified,* ¶ 21.
[16] *Id.* at ¶ 17; Complaint at ¶ 22.
[17] *Id.* at ¶ 18; Complaint at ¶ 23.
[18] *See* Exhibit 1; *see also* Fuller Aff. ¶ 19; Complaint at ¶ 24.
[19] Fuller Aff. ¶ 20.
[20] *Id.* at ¶ 21.
[21] *Id.* at ¶ 22
[22] *Id.* at ¶ 23.

23. Nevertheless, Defendant still owed the outstanding balance for May 2021 of $40,016.36.[23]

24. On July 19, 2021, after Defendant failed to further remit any payments for the outstanding balance, Plaintiff contacted Defendant. [24]

25. Specifically, Mr. Carter emailed three of Defendant's agents, Mr. Piccione, Mr. Rinker, and "Denisa," requesting that the second half of May 2021 remit be paid. [25]

26. Defendant failed to respond.[26]

27. On July 22, 2021, Mr. Fuller contacted Mr. Piccione via text message. [27]

28. Mr. Fuller informed Mr. Piccione that Defendant has failed not only to remit the second half of May 2021's payments, but Defendant has also failed to remit June 2021 payments.[28]

29. Mr. Piccione asserted that on July 23, 2021, Defendant would send Plaintiff the second half of May 2021's payment, and both of July 2021's payments. [29]

30. Defendant, again failed to remit any payments as promised. [30]

31. Mr. Carter then sent Mr. Piccione text message on July 23, 2021, inquiring whether Defendant wired the outstanding payments as promised.[31]

32. Defendant, again, failed to respond.[32]

---

[23] *Id.* at ¶ 24.
[24] *Id.* at ¶ 25.
[25] *Id.* at ¶ 26.
[26] *Id.* at ¶ 27; Complaint at ¶ 31.
[27] *Id.* at ¶ 28.
[28] *Id.* at ¶ 29.
[29] *Id.* at ¶ 30
[30] *Id.* at ¶ 31.
[31] *Id.* at ¶ 32; Complaint at ¶ 37.
[32] *Id.* at ¶ 33.

33. Plaintiff then attempted to contact Defendant on July 29, 2021, concerning the past due outstanding payments.[33]

34. Defendant ignored this message as well.[34]

35. Finally, almost a month later, Defendant wired Plaintiff a $30,000.00 payment.[35]

36. On September 15, 2021, Mr. Fuller emailed Defendant's agents, Mr. Piccione , Mr. Rinker, and Denisa, concerning Defendant's past due and owning amounts.[36]

37. Mr. Fuller requested that in order for Defendant to resolve all outstanding balances that Defendant remit a payment of $30,000.00 by September 17, 2021.[37]

38. Thereafter, Defendant would be required to remit payments of $30,000.00 on the first and fifteenth of each month going forward until all past due and owing remits are resolved.[38]

39. Furthermore, Plaintiff notified that if Defendant cannot or will not resolve the outstanding, past due amounts by the expected timeline, Plaintiff will require Defendant from ceasing to run any future payments on accounts owned by Plaintiff.[39]

40. Unbelievably, in response to Plaintiff, Mr. Piccione made threats to Mr. Fuller.[40]

41. Specifically, Mr. Piccione made threats such as,

    a. Don't think I can't just take a flight over to Utah.

---

[33] *Id.* at ¶ 34.
[34] *Id.* at ¶ 35.
[35] *Id.* at ¶ 36.
[36] *Id.* at ¶ 37.
[37] *Id.* at ¶ 38.
[38] *Id.* at ¶ 39.
[39] *Id.* at ¶ 40.
[40] *Id.* at ¶ 41.

b.  I know where you live.

c.  I could be at your doorstep at any time.

d.  You're acting all tough by sending that email but if we were face to face
    you would be scared shitless.

e.  I'm going to make sure that Vivint never sells to you again.

f.  I'm going to make sure the Deacon of your church knows you're a liar and
    a scam artist.

g.  If I'm going down, I'm going to take you down with me.[41]

42.  Stunningly, after the threatening comments by Samuel, Defendant remitted a
     payment of $20,000.00 on September 17, 2021.[42]

43.  Defendant then made two additional $20,000.00 payments, one October 1, 2021;
     and the second on October 19, 2021.[43]

44.  In total, Defendant remitted $90,000.00 out of $488,547.00 owed to Plaintiff.[44]

45.  Defendant owes an amount of not less than $398,547.00 to Plaintiff.[45]

46.  As a result of Defendant breach of the Parties' *Agreement*, it has become necessary
     for Plaintiff to prosecute these claims in order to attempt to recover injuries caused
     by Defendant.[46]

---

[41] *Id.* at ¶ 42.
[42] *Id.* at ¶ 43.
[43] *Id.* at ¶ 44.
[44] *Id.* at ¶ 45.
[45] *Id.* at ¶ 46.
[46] *Id.* at ¶ 47.

## ARGUMENT

Plaintiff respectfully requests that it be immediately granted, and given, prejudgment permission to execute against any and all bank accounts maintained by Defendant, and that Plaintiff be granted, and given, prejudgment permission to execute against any other assets maintained by Defendant; including but not limited to, bank accounts, or any other office equipment owned by Defendant, up to a value of not less than $398,547.00. Plaintiff meets the criteria for issuance of a prejudgment writ as detailed by Utah R. Civ. P. 64A(c)(1)-(3), accordingly, grounds exist for the issuance of the pre-judgment writ in accordance with Utah R. Civ. P. 64A(c)(4)-(10).

### I. PLAINTIFF MEETS THE REQUIREMENT OF UTAH R. CIV. P. 64A(c) FOR ISSUANCE OF A PREJUDGMENT WRIT.

Utah R. Civ. P. 64A(c)(1)-(3) requires "that the property is not earnings and not exempt from execution; and. . . the writ is not sought to hinder, delay or defraud a creditor of defendant; and. . . [there is] a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim."

Each of those elements is met in the instant case. The proposed property is: (a) Cash Assets and Accounts Receivable; (b) Office Equipment; (c) Other Equipment; (d) Computers; and (e) other property which may be discovered. The proposed property subject to writ "is not earnings and is not exempt from execution."[47] Plaintiff has no knowledge any of Defendant' other creditors. This writ is "not sought to hinder, delay or defraud a creditor of Defendant."[48] Finally, Plaintiff posits there is a substantial

---

[47] Utah R. Civ. P. 64A(c)(1).
[48] *Id.* at (c)(2).

likelihood that Plaintiff will prevail on the merits of this action based on the facts outlined herein.[49]

Utah R. Civ. P. 64A(c)(5) through (c)(10) requires:

> [T]hat the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, the property with intent to defraud creditors; or that the defendant has left or is about to leave the state with intent to defraud creditors; or that the defendant has fraudulently incurred the obligation that is the subject of the action; or that the property will materially decline in value; or that the plaintiff has an ownership or special interest in the property; or probable cause of losing the remedy unless the court issues the writ.[50]

Although Plaintiff only need to meet one of the elements in Utah R. Civ. P. 64A(c)(4) through (c)(10), Plaintiff meets Utah R. Civ. P. 64A(c)(5), and (c)(7) through (c)(10). Plaintiff will suffer irreparable injury if a writ is not issued because there is a substantial risk the Defendant will attempt, or already has disposed of or concealed any amounts owed to Plaintiff.[51]

Defendant registered with the Utah Division of Corporations and Commercial Code as foreign limited liability company collection agency on April 25, 2018. As outlined in the Statement of Facts, Plaintiff has ownership and special interest in the collection accounts received by Defendant, and has a substantial risk of losing this remedy unless this Court issues the requested writ.[52] Moreover, because of breach of contract by Defendant, Plaintiff's property has a substantial risk of losing all monies that Defendant was contracted to recover because Defendant was successful in their collection

---

[49] *Id.* at (c)(3).
[50] *Id.* at (c)(5) through (c)(10).
[51] *Id.* at (c)(5); and Fuller Aff. at ¶¶ 45-46
[52] *Id.* at (c)(9) and (c)(10); *see also, Complaint Verified*; and Fuller Aff., *generally.*

efforts. Defendant placed these funds it collected in trust on Plaintiff's behalf. Defendant's failure to remit the funds to Plaintiff breached their fiduciary duty to Plaintiff. Specifically, Defendant engaged in a fiduciary activity when it began holding funds owed to Plaintiff in trust.

Furthermore, Plaintiff has substantially performed and relied on Defendant's promises under the Parties' *Agreement*. Defendant breached the contract by failing to abide by the *Agreement* terms contained within the contract. Defendant's failure to abide by the terms of the *Agreement* are in bad faith, grossly negligent, malicious, or intentional. As a direct and proximate result of Defendant's breach, Plaintiff suffered considerable damages including both general and special, in the past and in the future.

For all these reasons, Plaintiff satisfies the requirements of Utah R. Civ. P. 64A for the issuance of a writ of attachment.

## II.   PLAINTIFF MEETS THE REQUIREMENTS FOR A WRIT OF ATTACHMENT STATED IN UTAH R. CIV. P. 64C(b).

Utah R. Civ. P. 64C(b) requires, before the issuance of a writ of attachment, that the Plaintiff show "(1) that the defendant is indebted to the plaintiff. . . (2)(i) that the action is upon a contract or is against a defendant who is not a resident of this state or is against a foreign corporation not qualified to do business in this state; or . . . (2)(ii) the writ is authorized by statute; and . . . (3) that payment of the claim has not been secured by a lien upon property in this state."[53]

---

[53] Utah R. Civ. P. 64C.

Here, there is an enforceable contract, in writing, between Plaintiff and Defendant.[54]   Specifically, Plaintiff entered into the *Agreement* with Defendant on January 6, 2015, for the sole purpose of collecting on default accounts.[55]  Defendant failed to abide by the *Agreement* by refusing to remit the funds collected on behalf of Plaintiff.[56]  Additionally, Defendant refused to cure any breaches.[57]  Defendant's interference with the Parties' *Agreement* caused Plaintiff to lose the benefit of the contract.  At minimum, Defendant owe Plaintiff no less than $398,547.00, for Defendant's material breaches of the *Agreement*.

Therefore, Defendant are indebted to Plaintiff.  The amounts owed to Plaintiff by Defendant are the direct and proximate result of Defendant's breach of fiduciary duties, intentional or negligent interference with the *Agreement*, and the amounts owed to Plaintiff are unsecured.

Accordingly, all the elements for issuance of a writ of attachment have been met.

### III.   PLAINTIFF HAS AN EXTREMELY HIGH LIKELIHOOD OF PREVAILING ON THE MERITS.

All that must be shown in a breach of contract action is (1) that there was a contract; (2) Plaintiff complied with the terms of that contract; (3) Defendant breached the contract; resulting in (4) Plaintiff's damages.

Here, all four elements of the claim are strongly supported by the contract (*Collection Agreement*), and Defendant's breach of fiduciary duty.  Accordingly, Plaintiff

---

[54] *See* <u>Exhibit 1</u>; *see also,* Fuller Aff. at ¶ 7.
[55] *Id.*; Fuller Aff. at ¶¶ 7-8.
[56] Fuller Aff. at ¶¶ 10-39, and 46.
[57] *Id.*

has an extremely high likelihood of prevailing on the merits of its breach of contract claim. Specifically, the contract makes plain the performance required of each party.[58]

Defendant entered into the *Agreement* with Plaintiff for the specific purpose of Defendant attempting to collect on past due receivables owned by Plaintiff.[59] Pursuant to the terms of the *Agreement*, Defendant were required to take all reasonable steps to collect on the past due receivables owned by Plaintiff, from which, Defendant would receive a 40% commission from amounts recovered..[60] Pursuant to the *Agreement*, Defendant will be responsible for all collection efforts performed on behalf of Plaintiff."[61] Additionally, Defendant fraudulently retained all funds collected on behalf of Plaintiff, without remitting the funds owed to Plaintiff.[62]

Defendant breached its fiduciary duty by failing to remit the funds collected on behalf of Plaintiff. Plaintiff performed its contractual duties pursuant to the *Agreement*.[63] Defendant, on the other hand, failed to perform its obligations by materially breaching the *Agreement*, and breaching the good faith and fair dealings owed to Plaintiff, breaching the fiduciary duties owed to Plaintiff.[64] Defendant is fully aware of the amounts owed to Plaintiff.[65]

---

[58] *See generally,* <u>Exhibit 1</u>.
[59] *See* <u>Exhibit 1</u>; Fuller Aff. at ¶¶ 8-10.
[60] *Id.*; and Fuller Aff. at ¶¶ 9-10.
[61] *Id.* at ¶ VI.
[62] Fuller Aff. at ¶ 46.
[63] *See generally,* <u>Exhibit 1</u>
[64] *Id., see also, generally,* Fuller Aff.
[65] *See* Fuller Aff. at ¶ 46.

Accordingly, it is evident that Plaintiff fully performed all its obligations, and in fact exceeded the performance required. Meanwhile, Defendant failed to perform and left with no less than $398,547.00, owed to Plaintiff.

CONCLUSION

No other known person or entity can lawfully claim an interest in the monies sought by Plaintiff. For all the foregoing reasons, this Court should issue a prejudgment writ of attachment. Plaintiff respectfully requests that it immediately be granted a prejudgment writ of garnishment, and be given prejudgment permission to execute against any assets maintained by Defendant, including, but not limited to, any bank accounts, construction equipment, vehicles, or other assets, up to the value of no less than $398,547.00.

SIGNED and DATED this 19th day of July 2022.

HEIDEMAN & ASSOCIATES
/s/ Norman W. Peat, Jr.
NORMAN W. PEAT, JR.
*Attorney for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

     The undersigned hereby certifies that on <u>July 19, 2022</u>, a true and correct copy of the foregoing **MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT, AND WRIT OF GARNISHMENT** was served on the following individual(s) by the method indicated below.

| Party/Attorney | Method |
|---|---|
| ***Defendant:***<br><br>Capital Link Management, LLC<br>c/o Corporation Service Company<br>15 West South Temple, Suite 600<br>Salt Lake City, Utah 84101 | _X_ U.S. Mail, postage prepaid<br>_X_ Personal Service<br>__ Fax Transmission<br>__ Email<br>__ Electronic<br>__ Filing/Notification |

**HEIDEMAN & ASSOCIATES**
/s/ *Kayla Jackson*
KAYLA JACKSON
*Legal Assistant*

**Bilingual Notice to Responding Party for Motions** (for compliance with URCP 7)

### Notice to responding party

You have a limited amount of time to respond to this motion. In most cases, you must file a written response with the court and provide a copy to the other party:

- within 14 days of this motion being filed, if the motion will be decided by a judge, or
- at least 14 days before the hearing, if the motion will be decided by a commissioner.

In some situations a statute or court order may specify a different deadline.

If you do not respond to this motion or attend the hearing, the person who filed the motion may get what they requested.

See the court's Motions page for more information about the motions process, deadlines and forms:

utcourts.gov/motions



Scan QR code
to visit page

### Finding help

The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.

Scan QR code
to visit page

### Aviso para la parte que responde

Su tiempo para responder a esta moción es limitado. En la mayoría de casos deberá presentar una respuesta escrita con el tribunal y darle una copia de la misma a la otra parte:

- dentro de 14 días del día que se presenta la moción, si la misma será resuelta por un juez, o
- por lo menos 14 días antes de la audiencia, si la misma será resuelta por un comisionado.

En algunos casos debido a un estatuto o a una orden de un juez la fecha límite podrá ser distinta.

Si usted no responde a esta moción ni se presenta a la audiencia, la persona que presentó la moción podría recibir lo que pidió.

Vea la página del tribunal sobre Mociones para encontrar más información sobre el proceso de las mociones, las fechas límites y los formularios:



Para accesar esta página
escanee el código QR

utcourts.gov/motions-span

### Cómo encontrar ayuda legal

La página de la internet del tribunal Cómo encontrar ayuda legal (utcourts.gov/help-span) tiene información sobre algunas maneras de encontrar ayuda legal, incluyendo el Centro de Ayuda de los Tribunales de Utah, abogados que ofrecen descuentos u ofrecen ayuda legal limitada, y talleres legales gratuitos.



Para accesar esta página
escanee el código QR

# Exhibit 1

## COLLECTION AGREEMENT

THIS AGREEMENT is dated January 6, 2015 and is between Perfection Collection LLC (the "Client") and Commerce Recovery and Capital Management LLC . (the "Agency").

WHEREAS, Client wishes to assign certain delinquent accounts to Agency for Collection from time to time; and WHEREAS, Agency agrees to undertake collection efforts on Client's behalf on the terms set forth in this Agreement.

NOW, THEREFORE, intending to be legally bound, the parties agree as follows:

1. Collection of Accounts. From time to time Client will assign certain delinquent accounts to Agency for collection. Client has sole discretion in determining which accounts shall be assigned to Agency, except that Client will not knowingly assign accounts involving fraud or forgery. The term "Account" means the unpaid account, legal instruments, contract rights and all other rights Client possesses under the Uniform Commercial Code or otherwise. Client will provide Agency with all documentation and information it possesses relating to assigned Accounts necessary for collections.

2. Agency Efforts. Agency will take all reasonable steps to collect Accounts assigned to it.

3. Licensing; Bonding. Agency warrants that it is properly licensed and bonded in all jurisdictions in which it collects on the Accounts and that it will at all times remain so. On each anniversary of this Agreement, Agency will provide Client with evidence that its license(s) and bond(s) are in effect.

4. Settlement. Agency may accept proposals of compromise or settlement of Account without approval by Client. Anything below 50% of the assigned balance of the Account requires Client's authorization.

5. Commissions.
   Client agrees to pay Agency a commission of 40%. Agency shall be entitled to a commission according to the terms above on any payments that debtors send directly to Client for assigned Accounts until such time as an Account is recalled by Client.

6. Uncollectible Accounts. Any Account for which no payment has been received after 180 days, except Accounts referred to legal counsel, or as determined by Client, shall be considered uncollectible and returned to Client, unless Client agrees otherwise in writing.

*REV 04/02/09*

7. <u>Accounting for Funds.</u>  All funds collected on Accounts shall be paid monthly minus the Agency's fee.  Agency also agrees to provide Client with a monthly written report of collections.  Agency shall be responsible for any loss or theft of funds collected by it until submitted to the Client.  Client will notify Agency promptly if it receives funds directly from a debtor on an Account.  Client shall have the right to inspect and audit Agency's operations and records at any time.

8. <u>Sharing of Information.</u>  Agency agrees to advise Client of any new or additional information relating to Accounts, such as new addresses, telephone numbers or places of business upon returning accounts.  Client agrees upon request to furnish Agency with new or additional information it receives relating to Accounts.

9. <u>Indemnification.</u>  Agency shall indemnify, hold harmless and defend Client, its servants, agents, employees, and subsidiaries from any and all third-party claims, demands, suits, judgments, damages, costs and expenses, including attorney fees, and any and all liability imposed by law or assumed under contract, for damages because of any act or omission arising out of Agency's performance or breach of this Agreement, or the collection activities of the Agency or any of its employees, agents or contractors. Should any claim give rise to a duty of indemnification under this Agreement, Client shall promptly notify Agency.

Client shall indemnify, hold harmless and defend Agency, its servants, agents, employees, and subsidiaries from any and all third-party claims, demands, suits, judgments, damages, costs and expenses, including attorney fees, and any and all liability imposed by law or assumed under contract for damages because of any act or omission arising out of Client's performance of this Agreement, to the extent caused by the negligent acts, errors or omissions of Client. Should any claim give rise to a duty of indemnification under this Agreement, Agency shall promptly notify Client.

The parties agree that each will assume its own proper responsibility for the actions of its own employees in connection with any claims made by a third party against the Client and/or the Agency. In the event that a suit is filed against Client in connection with any action taken to collect on an Account assigned to Agency, Client reserves the right to choose its own counsel.

10. <u>Non Pledge.</u>  Agency may not pledge or in any way encumber Accounts.

11. <u>Termination.</u>  Either party may terminate this Agreement by giving the other notice in writing not less than 30 days prior to the effective date of termination; provided, however, that Client may terminate this Agreement for cause effective upon the giving of notice.  In the event of termination, Agency shall return to Client all records and documents relating to Accounts and shall relinquish all

*REV 04/02/09*

rights to the Accounts. In the event of termination, Agency shall be entitled to commissions as set forth in this Agreement on all funds it collects prior to the effective date of termination.

12. Miscellaneous. A) This Agreement may be amended only with the written consent of both parties. B) Any notices required or contemplated by this Agreement, including a change of address to which notices are to be sent, shall be in writing and shall be addressed as follows:

Agency: Commerce Recovery And Capital Management LLC

Client: Perfection Collection LLC
313 E 1200 S suite 102
Orem, UT 84058

IN WITNESS WHEREOF, the parties have executed this Agreement on the date written above.

*Agency: Commerce Recovery and Capital Management*

*Signature: Jonathan Rinker*
*Samuel Piccione*

*Title:* COO
CEO

*Print Name:* Jonathan Rinker

Samuel Piccione

*Client:*

*Signature:*

*Title:* CEO

*Print Name:* Chris Carter

*REV 04/02/09*

JUSTIN D. HEIDEMAN (USB #8897)
NORMAN W. PEAT, JR. (USB #17836)
**HEIDEMAN & ASSOCIATES**
2696 N. University Ave., Suite 180
Provo, Utah 84604
Telephone: (801) 472-7742
Fax: (801 374-1724
Email:jheideman@heidlaw.com
        npeat@heidlaw.com
*Attorneys for Plaintiff*

## IN THE FOURTH JUDICIAL DISTRICT COURT
## IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| MOUTAIN RUN SOLUTIONS, LLC, a Utah Limited Liability Company, | **AFFIDAVIT OF BRIAN FULLER** |
| Plaintiff, | |
| vs. | |
| CAPITAL LINK MANAGEMENT, a Utah Foreign Limited Liability Company, | |
| Defendant. | Case No.: 220401093 Judge: Hon. Sean Petersen |

STATE OF UTAH    )
              :ss.
COUNTY OF UTAH    )

I, BRIAN FULLER, being first duly sworn and upon oath, state as follows:

1.    I am over eighteen (18) years of age, have personal knowledge of the matters in this affidavit, and am fully qualified to testify under the laws of the State of Utah.

2.    I am the President of Mountain Run Solutions, LLC ("MRS"), Plaintiff.

3.    MRS is a company that specializes in purchasing non-performing receivables in all industries.

4.    MRS started operations on or about May 2015, as Perfection Collection, LLC.

5. In 2019, MRS changed its name from Perfection Collection, LLC, to Mountain Run Solutions, LLC.

6. Capital Link Management ("CLM") is a third-party collection agency that specializes in, but not limited to, the collection of consumer, commercial, installment loan, and medical debt.[1]

7. On January 6, 2015, agents for CLM, Jonathan Rinker ("Mr. Rinker"), and Samuel Piccione ("Mr. Piccione") entered in to, and signed, the Collection Agreement ("Agreement") on behalf of, and for CLM, with MRS in effort to recover non-performing receivables on behalf of MRS.

8. Pursuant to the terms of the *Agreement*, MRS agreed that it would assign delinquent accounts of MRS it owned with MRS for collect efforts.

9. Pursuant to the terms of the *Agreement*, CLM agreed that it was to take all reasonable steps to collect Accounts assigned to it (CLM).

10. CLM accepted a forty (40) percent commission "on any payments that debtors send directly to Client (MRS) for assigned Account. . ."

11. Pursuant to the terms of the *Agreement*, CLM was required to, and agreed that "[a]ll funds collected on Accounts shall be paid monthly minus the Agency's (CLM's) fee."

12. MRS started placing accounts with CLM shortly after all Parties signed the *Agreement*.

---

[1] Capital Link management, LLC operated its third-party collection agency under the name of previous name of Commerce Recovery and Capital Management, LLC.

13. MRS continued placing accounts with CLM until December 2020.

14. In June of 2021, MRS became concerned with CLM's ability to remit payments to MRS from CLM's successful collection efforts.

15. In anticipation of the *Agreement* being repudiated by CLM, Plaintiff requested adequate assurance of performance by Defendant.

16. On June 23, 2021, Chris Carter ("Mr. Carter"), who holds the position of Chief Executive Officer with MRS, contacted CLM to discern whether CLM was going to remit amounts owed from the first half of May 2021.

17. Specifically, Mr. Carter emailed CLM requesting if CLM is going to remit $48,482.96 that was due and owing.

18. On June 29, 2021, after CLM failed to remit the amount owed or even communicate with MRs, Mr. Carter emailed CLM again requesting whether the funds would be paid that day.

19. Again, CLM failed to remit any payments due and owing as required under the *Agreement*.[2]

20. On June 30, 2021, I contacted agent for CLM, Mr. Piccione, concerning the failure to remit payments pursuant to the Parties' *Agreement*.

21. Mr. Piccione confirmed that MRS would receive a payment the following day.

22. Additionally, Mr. Piccione confirmed with me that CLM would cure all remaining outstanding amounts owed.

---

[2] *Id.*

23. On July 1, 2021, CLM made a payment of $48,482.00 for the first half of the amount owed for May 2021.

24. Nevertheless, CLM still owed the outstanding balance for May 2021 of $40,016.36.

25. On July 19, 2021, after CLM failed to further remit any payments for the outstanding balance, Mr. Carter contacted CLM.

26. Specifically, Mr. Carter emailed three of CLM's agents, Mr. Piccione, Mr. Rinker, and "Denisa," requesting that the second half of May 2021 remit be paid.

27. CLM failed to respond.

28. On July 22, 2021, I contacted Mr. Piccione via text message.

29. I informed Mr. Piccione that CLM has failed not only to remit the second half of May 2021's payments, but CLM has also failed to remit June 2021 payments.

30. Mr. Piccione asserted that on July 23, 2021, CLM would send MRS the second half of May 2021's payment, and both of July 2021's payments.

31. CLM, again failed to remit any payments as promised.

32. Mr. Carter then sent Mr. Piccione text message on July 23, 2021, inquiring whether CLM wired the outstanding payments as promised.

33. CLM, again, failed to respond.

34. I then attempted to contact CLM on July 29, 2021, concerning the past due outstanding payments.

35. CLM ignored this message as well.

36. Finally, almost a month later, CLM wired Plaintiff a $30,000.00 payment.

37. On September 15, 2021, I emailed CLM's agents, Mr. Piccione , Mr. Rinker, and Denisa, again concerning Defendant's past due and owning amounts.

38. I requested that in order for CLM to resolve all outstanding balances that CLM remit a payment of $30,000.00 by September 17, 2021.

39. Thereafter, CLM would be required to remit payments of $30,000.00 on the first and fifteenth of each month going forward until all past due and owing remits are resolved.

40. Furthermore, I notified that if CLM cannot or will not resolve the outstanding, past due amounts by the expected timeline, MRS will require CLM from ceasing to run any future payments on accounts owned by MRS.

41. Unbelievably, in response to my email, Mr. Piccione made threats against me.

42. Specifically, Mr. Piccione made threats such as,

   a. Don't think I can't just take a flight over to Utah.

   b. I know where you live.

   c. I could be at your doorstep at any time.

   d. You're acting all tough by sending that email but if we were face to face you would be scared shitless.

   e. I'm going to make sure that Vivint never sells to you again.

   f. I'm going to make sure the Deacon of your church knows you're a liar and a scam artist.

   g. If I'm going down, I'm going to take you down with me.

43.    Stunningly, after the threatening comments by Mr. Piccione, CLM remitted a payment of $20,000.00 on September 17, 2021.

44.    CLM then made two additional $20,000.00 payments, one October 1, 2021; and the second on October 19, 2021.

45.    In total, CLM remitted $90,000.00 out of $488,547.00 owed to MRS.

46.    CLM continues to owe an amount of not less than $398,547.00 to MRS.

47.    Because of CLM's refusal to remit amounts owed to MRS, CLM left MRS no other choice but to file suit to recover the funds.

///

///

///

///

///

///

///

///

///

/// (*Verification following page*)

///

///

///

## VERIFICATION

On this __18__ day of July 2022, before me__ Hector Mancia __,
a notary public, on behalf of and for, MOUNTAIN RUN SOLUTIONS, LLC, personally
appeared BRIAN FULLER, being first duly sworn and upon oath, and deposes and states
that he has read the foregoing <u>Affidavit</u>, knows, and understands the contents thereof,
and that the same is true and correct to the best of his own knowledge, to which he verifies
and affirms under penalty of criminal perjury.

DATED this ____18____ day of ____July____ 2022.

MOUNTAIN RUN SOLUTIONS, LLC, Plaintiff

By: BRIAN FULLER, __President__

SUBSCRIBED and SWORN to before me this __18__ day of __July__ 2022.

NOTARY PUBLIC in and for the State of Utah
My Commission expires: __05/19/2024__



NOTARY PUBLIC
Hector Mancia
COMM. # 712072
My Commission Expires
05/19/2024
STATE OF UTAH